UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| JOHN FRANCIS CYR and WILLIAM DEAN MORRIS, <br><br> Plaintiffs, <br><br> v. <br><br> PIERCE COUNTY, *et al.*, <br><br> Defendants. | CASE NO. C16-0430 RSM <br><br> ORDER GRANTING DEFENDANTS' MOTION TO DISMISS |

## I.  INTRODUCTION

This matter comes before the Court on Defendants' Motion to Dismiss under Federal Rules of Civil Procedure 12(b)(6).  (Dkt. #3).  Defendants argue that, accepting all factual allegations as true, Plaintiffs' claims fail as a matter of law for a number of reasons, but primarily because the individual Defendants are entitled to qualified immunity under federal and state law and because Plaintiffs have failed to state any claims against Pierce County.  *Id.*  Plaintiffs oppose the motion, arguing that Defendants have ignored the well-pleaded facts entitling them to relief.  Dkt. #13.  In their opposition, Plaintiffs focus almost exclusively on their claims under 42 U.S.C. § 1983.  *Id.*  For the reasons set forth below, the Court disagrees with Plaintiffs and now GRANTS Defendants' motion to dismiss.

ORDER
PAGE - 1

## II.  BACKGROUND

This matter arises from a domestic dispute over a cell phone. *See* Dkt. #1, Ex. A and Exhibit A thereto. On August 6, 2014, Pierce County Sheriff's Deputies responded to a call at 16918 74th Street KPN, Vaughn, WA 98394. Plaintiff John Cyr owns the property. Dkt. #1, Ex. A at ¶ 3.1. Deputies were called by Dale Morris (not to be confused with Plaintiff William Dean Morris), who was staying as a guest on the property. *See* Dkt. #1, Ex. A and Exhibit A thereto. Dale[1] informed the Deputies that Mr. Cyr had confronted him, pointed a gun in his face, and told him to leave the property. *Id.* Dale also stated that Mr. Cyr took his cell phone. Apparently, Dale owned the phone, but Mr. Cyr had been paying the bill for several months. *Id.*

Dale then informed Deputies that Mr. Cyr possessed multiple firearms, even though he had been convicted of prior felonies, and was conducting a large scale marijuana growing operation on the property. *Id.* He described where various plants and "fresh cuts" could be located. *Id.* He further informed Deputies that Mr. Cyr had his firearms rights restored in the State of Washington, but not in the other states in which he was convicted. *Id.* With respect to the cannabis operation, he said Mr. Cyr told him that police could not do anything to him because he (Cyr) has a medical marijuana card. *Id.*

Deputies contacted Mr. Cyr by telephone, who agreed to come speak with them. *Id.* He arrived at their location on his property in his Toyota 4-Runner and got out of the vehicle. Deputies immediately placed him in handcuffs, moved him to the back of a patrol car, and read him his *Miranda* warnings. *Id.* Mr. Cyr acknowledged his rights and agreed to speak with the officers. He admitted to taking Dale's phone, but denied pointing a gun in his face. Dkt. #1,

---

[1] The Court will reference Dale Morris by his first name to avoid confusion with Plaintiff William Dean Morris, and intends no disrespect by doing so.

ORDER
PAGE - 2

Ex. A and Exhibit A thereto.  He also admitted that he had multiple guns in a gun safe on the property, including a .22 rifle, a .22 pistol, a .44 magnum, and a 9mm handgun.  *Id.*  He stated that he had his gun rights restored in Washington, but not in other states where he had been convicted.  He offered the Washington paperwork to Deputies, which he kept in the glove box of his 4-Runner.  *Id.*

No one retrieved the paperwork.  Instead, one of the Deputies began to question Mr. Cyr about the marijuana plants.  At that point, Mr. Cyr no longer wanted to speak with the Deputies and asked for a lawyer.  *Id.*  Mr. Cyr was placed under arrest and transported to the Pierce County Jail.

Deputies then obtained a search warrant for Mr. Cyr's property, where they wanted to look for guns, marijuana, and related drug paraphernalia.  *Id.* and Dkt. #1, Ex. A at ¶ 3.1.  The Affidavit submitted in support of the search warrant included information about Mr. Cyr's restoration of his gun rights in Washington and that he possessed a medical cannabis card. Dkts. #1, Ex. A and Exhibit A thereto and #4, Ex. A.

Upon executing the search warrant, Deputies recovered 139 cannabis plants and 30 cannabis stocks. Dkt. #4, Ex. A.  They also recovered Mr. Cyr's gun safe.  When questioned about the combination for the safe, Mr. Cyr informed Deputies that only William Dean Morris had the combination because he (Morris) was using the safe to store his guns.  *See* Dkt. #1, Ex. A at ¶ ¶ 3.11-3.12.  Deputies then contacted the Pierce County Fire Department to assist with opening the safe.  *Id.* at ¶ 3.13.  Deputies recovered six guns from the safe.  *Id.* at ¶ 3.14.

Mr. Cyr alleges that all of his growing equipment was also seized, which prevented him from continuing his business.  *Id.* at ¶ 3.16.  He also alleges that Deputies caused damage to his outbuildings.  *Id.* at ¶ 3.17.  He alleges that Deputies also called the Peninsula Premier Gun Pro

ORDER
PAGE - 3

Shop and reported that they had recovered stolen bows, but the shop owner told Deputies that Mr. Cyr had purchased the bows, not stolen them. Dkt. #1, Ex. A at ¶ 3.18. He alleges that one of the Deputies then called the Washington State Fish and Game Department to report that Mr. Cyr had several animal hides in his freezer, even though all of the hides were legally tagged. *Id.* at ¶ 3.19.

Mr. Cyr was ultimately charged with unlawful manufacture of marijuana and with six counts of felon in possession of firearms. *Id.* at ¶ 3.15. However, on July 9, 2015, all charges were dismissed with prejudice. Dkt. #1, Ex. A and Exhibit E thereto. The Order of dismissal stated that "law enforcement perpetrated a series of obstinate conduct that is tantamount to bad faith and mismanagement. . .". Dkt. #1, Ex. A and Exhibit E thereto. The Order further stated that Deputies had failed to present the order restoring Mr. Cyr's gun rights with the search warrant application and that constituted the failure to present a material fact required for probable cause. *Id.* The Order noted that even after all of the firearms evidence obtained from the search was suppressed, the prosecution continued prosecuting the case on an Information containing six firearms enhancements. The Order also found that same bad faith acts applied to the way the marijuana charges were pursued. *Id.* The instant action followed.

Plaintiffs now allege 11 causes of action, including:

1. trespass to chattels;
2. conversion;
3. negligence;
4. misrepresentation;
5. negligent infliction of emotional distress;

ORDER
PAGE - 4

      6. violation of civil rights (due process, invasion of privacy, equal protection, unreasonable search and seizure, discrimination, Second amendment right to bear arms, and Fourth and Fifth Amendment violations);

      7. false arrest;

      8. false imprisonment;

      9. assault and battery;

      10. intentional infliction of emotional distress; and

      11. malicious prosecution.

Dkt. #1, Ex. A at ¶ ¶ 4.1 – 14.10.

### III.   DISCUSSION

**A. Standard of Review**

On a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), all allegations of material fact must be accepted as true and construed in the light most favorable to the nonmoving party. *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337-38 (9th Cir. 1996). However, the court is not required to accept as true a "legal conclusion couched as a factual allegation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). The Complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id.* at 678. This requirement is met when the Plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Absent facial plausibility, Plaintiff's claim must be dismissed. *Twombly*, 550 U.S. at 570.

Thought the Court limits its Rule 12(b)(6) review to allegations of material fact set forth in the Complaint, the Court may consider documents for which it has taken judicial notice. *See*

ORDER
PAGE - 5

F.R.E. 201; *Swartz v. KPMG LLP*, 476 F.3d 756, 763 (9th Cir. 2007). Here, the Court has taken judicial notice of and considers herein the Exhibits attached to Plaintiff's Complaint, as well as the probable cause statement offered by Defendants. Dkts. #1, Ex. A and #4, Ex. A. The Court may properly take judicial notice of documents such as these whose authenticity is not contested and which Plaintiffs have relied on in their Complaint. *Swartz*, 476 F.3d at 763; *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001) (internal quotations and alterations omitted).

**B. Plaintiffs' Complaint**

Defendants argue that Plaintiffs' Complaint should be dismissed because Plaintiffs have failed to state a claim against the individually-named Defendants upon which relief can be granted, and because Plaintiffs have failed to adequately plead any claims against the County itself. Dkt. #3 at 6. The Court addresses their arguments in turn below.

*1. Individually-Named Defendants*

With respect to the individually-named Defendants, Defendants argue that the named Deputies should be dismissed for a multitude of reasons, including: 1) Deputies Folden, Readwin, Armstrong and Plummer are entitled to qualified immunity; 2) the Deputies had probable cause to arrest Mr. Cyr and a valid warrant to search his home and seize the drugs and guns in his possession; 3) Plaintiffs' general right to bear arms does not include the right to possess specific firearms that are seized as evidence of a crime; 4) Plaintiffs fail to plead any outrageous conduct that "shocks the conscience"; 5) Plaintiffs fail to allege membership to a protected class; 6) there is no private cause of action for Plaintiffs' claims under the Washington State Constitution; 7) Plaintiff's claim for misrepresentation is not a valid cause of

ORDER
PAGE - 6

action; and 8) Plaintiffs fail to plead facts necessary to support a claim of negligence. Dkt. #3 at 6.

Defendants first argue that the individual deputies should be dismissed because they are entitled to qualified immunity under federal and state law. Dkt. #3 at 6-8. "Qualified immunity is an affirmative defense that must be raised by a defendant." *Groten v. California*, 251 F.3d 844, 851 (9th Cir. 2001). When, as here, Defendants assert qualified immunity in a motion to dismiss under Rule 12(b)(6), "dismissal is not appropriate unless [the Court] can determine, based on the complaint itself, that qualified immunity applies." *Id.*

Government officials and law enforcement officers are entitled to qualified immunity if they act reasonably under the circumstances. *Wilson v. Layne,* 526 U.S. 603, 614 (1999). Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs,* 475 U.S. 335, 341 (1986). The traditional determination of whether an officer is entitled to summary judgment based on the affirmative defense of qualified immunity required applying a three-part test. *Saucier v. Katz*, 533 U.S. 194, 201-02, 121 S. Ct. 2151 (2001). Under *Saucier*, courts were required to first ask whether "[t]aken in the light most favorable to the party asserting the injury, [ ] the facts alleged show the officer's conduct violated a constitutional right?" *Id.* at 201. If the answer was no, the officer was entitled to qualified immunity. If the answer was yes, the court was required to proceed to the next question: whether the right was clearly established at the time the officer acted. *Id.* at 201-202. If the answer was no, the officer was entitled to qualified immunity. If the answer was yes, the court was required to answer the final question: whether the officer could have believed, "reasonably but mistakenly . . . that his or her conduct did not violate a clearly established constitutional right." *Jackson v. City of Bremerton*, 268 F.3d 646, 651 (9th Cir. 2001). If the

ORDER
PAGE - 7

answer was yes, the officer would be entitled to qualified immunity. If the answer was no, he is not. *Skoog v. County of Clackamas*, 469 F.3d 1221, 1229 (9th Cir. 2006).

However, the United States Supreme Court has since modified this standard. *Pearson v. Callahan*, 555 U.S. 223, 129 S. Ct. 808, 172 L. Ed.2d 565 (2009). In *Pearson*, the Court examined *Saucier* and held that reviewing judges are now permitted to exercise their discretion in deciding which of the first two prongs of the qualified immunity analysis should be addressed first in each particular case. *Pearson*, 555 U.S. at 241-42. This is because "the judges of the district courts and courts of appeals are in the best position to determine the order of decision-making [that] will best facilitate the fair and efficient disposition of each case." *Id.* at 242.

Plaintiffs allege that Defendants violated a number of their civil rights, including due process, invasion of privacy, equal protection, unreasonable search and seizure, discrimination, Second amendment right to bear arms, and Fourth and Fifth Amendment violations. Specifically, Plaintiffs assert that Deputies did not have probable cause for a search warrant because they failed to attach the order restoring Mr. Cyr's gun rights to the warrant application, and if they had done so probable cause would not have been established. Dkt. #13 at 5-6. The Court disagrees.

A plaintiff may sue for damages under § 1983 when an official causes the plaintiff to be subjected to an unconstitutional search by presenting a search warrant application that fails to establish probable cause. *See Greenstreet v. County of San Bernardino*, 41 F.3d 1306, 1308 (9th Cir. 1994). Qualified immunity precludes liability, however, unless "a reasonably well-trained officer in [Defendants'] position would have known that his [application] failed to establish probable cause and that he should not have applied for the warrant." *See id.* at 1310

ORDER
PAGE - 8

(quoting *Malley v. Briggs*, 475 U.S. 335, 345, 106 S. Ct. 1092, 89 L. Ed. 2d 271 (1986)). "Where the alleged Fourth Amendment violation involves a search or seizure pursuant to a warrant, the fact that a neutral magistrate has issued a warrant is the clearest indication that the officers acted in an objectively reasonable manner or, as [the Supreme Court has] sometimes put it, in 'objective good faith.'" *Messerschmidt v. Millender*, 132 S. Ct. 1235, 1245, 182 L. Ed. 2d 47 (2012) (quoting *United States v. Leon*, 468 U.S. 897, 922-23, 104 S. Ct. 3405, 82 L. Ed. 2d 677 (1984)). However, "the fact that a neutral magistrate has issued a warrant authorizing an allegedly unconstitutional suit does not end the inquiry into objective reasonableness." *Id.* The "shield of immunity" otherwise conferred by a warrant will be lost where "it is obvious that no reasonably competent officer would have concluded that a warrant should issue." *Id.* (quoting *Malley*, 475 U.S. at 341).

Reviewing the facts alleged in the Complaint and Exhibits attached thereto, and accepting them as true for purposes of this motion, the Court finds that the Complaint clearly shows that Defendants are entitled to qualified immunity under federal and state law. *See* Dkt. #1, Ex. A. The Fourth Amendment provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. CONST. AMEND. IV. In this context, probable cause exists when the affidavit supporting the warrant states facts showing "a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238-39, 103 S. Ct. 2317, 76 L. Ed. 2d 527 (1983). There need not be probable cause to suspect that the owner of the property to be searched committed a crime – only that the "things" (*i.e.*, the evidence) to be searched or seized are located on the property. *United States v. Adjani*, 452 F.3d 1140, 1146 (9th Cir. 2006). Moreover, another court's "determination of

ORDER
PAGE - 9

probable cause should be paid great deference by reviewing courts." *Illinois v. Gates,* 462 U.S. 213, 236, 103 S. Ct. 2317, 76 L. Ed. 2d 527 (1983) (internal quotation marks omitted). "A court must uphold a warrant if, 'under the totality of the circumstances, the magistrate had a substantial basis for concluding that probable cause existed.'" *United States v. Celestine,* 324 F.3d 1095, 1102 (9th Cir. 2003) (quoting *United States v. Schmidt,* 947 F.2d 362, 371 (9th Cir. 1991)). Further, "after-the-fact scrutiny by courts of the sufficiency of an affidavit should not take the form of de novo review." *Gates,* 462 U.S. at 236.

Given that the Court must give "great deference" to the state court's determination, the Court agrees with Defendants that there was sufficient support in the Affidavit to conclude that there was probable cause to issue the search warrant. The search warrant Affidavit recounts that Dale Morris had been assisting Mr. Cyr with a marijuana operation that Mr. Cyr used to supplement his income. Dkt. #1, Ex. A and Exhibit A thereto. It detailed the number of plants and stocks that Deputies could expect to find on the property. *Id.* The Affidavit also noted that Mr. Cyr possessed a medical marijuana card, but the number of plants reported by Dale exceeded the legal number even for a legal medical marijuana operation. *Id.* The Affidavit also noted that Mr. Cyr himself had admitted to having firearms on the property, that he had his gun rights restored in Washington, but that he had not had his rights restored in other states where he had felony convictions. *Id.* The Affidavit also stated that although Mr. Cyr told Deputy Readwin where they could locate the Order restoring his Washington rights, Deputy Readwin had not retrieved or reviewed the Order at the time he wrote his report. *Id.* In addition, the Affidavit noted that Deputy Plummer called an agent from the bureau of Alcohol Tobacco and Firearms to get clarification on a possible charge of felon in possession of firearms. Dkt. #1, Ex. A and Exhibit A thereto. The agent apparently noted that Mr. Cyr could

ORDER
PAGE - 10

not lawfully possess firearms until his rights had been restored in all states where he had felony convictions. *Id.*

It is true that "[g]overnment investigators may be liable for violating the Fourth Amendment when they submit false and material information in a warrant affidavit." *Galbraith v. Cnty. of Santa Clara*, 307 F.3d 1119, 1126 (9th Cir. 2002) (citations omitted). Thus, a plaintiff "must show that the investigator 'made deliberately false statements or recklessly disregarded the truth in the affidavit' and that the falsifications were 'material' to the finding of probable cause." *Id.* (citing *Hervey v. Estes*, 65 F.3d 784, 790 (9th Cir. 1995)); *see also Garcia v. Cnty. of Merced*, 639 F.3d 1206, 1212 (9th Cir. 2011) (noting that a plaintiff must establish both a "showing of deliberate falsehood or reckless disregard" and "establish that, without the dishonestly included or omitted information, the magistrate would not have issued the warrant") (citation omitted)). In this case, Plaintiffs cannot make such a showing. As noted above, the Affidavit stated that Mr. Cyr had his gun rights restored in Washington, and that Deputies had not retrieved or reviewed the order restoring those rights. They did not hide those facts. The issuing Judge was made aware of the order restoring Mr. Cyr's gun rights in Washington, but issued the warrant despite the fact that it was not attached to the Affidavit.

All of these facts, along with the others contained in the Affidavit, are sufficient, under the totality of the circumstances, to reveal a fair probability that contraband or evidence of the crimes of unlawful manufacture of a controlled substance and unlawful possession of firearms, and there was a substantial basis for the Judge to conclude that a search would uncover evidence of such wrongdoing. As a result, it is clear on the face of Plaintiffs' Complaint that no constitutional violations occurred, and the individual Deputies are therefore immune from suit on the Sixth Cause of Action based on qualified immunity under federal law.

ORDER
PAGE - 11

In addition, the Court agrees with Defendants that Plaintiffs' state law claims for false arrest, false imprisonment, trespass to chattels, conversion, assault, battery, malicious prosecution, negligence, and misrepresentation also fail because the Deputies are entitled to state qualified immunity. State law qualified immunity applies when an officer (1) carries out a statutory duty, (2) according to procedures dictated to him by statute and superiors, and (3) acts reasonably. *Guffey v. State*, 103 Wash. 2d 144, 152, 690 P.2d 1163, 1167 (1984), *implied overruling on other grounds* recognized by *Savage v. State*, 127 Wn.2d 434, 899 P.2d 1270 (1995); *Babcock v. State*, 116 Wn.2d 596, 618, 809 P.2d 143 (1991). In this case, the Deputies were carrying out a statutory duty in arresting Mr. Cyr. Further, for the reasons set forth above, the Deputies acted reasonably under the circumstances and according to procedures. Therefore the Deputies are also immune from suit on Plaintiffs' First, Second, Third, Fourth, Seventh, Eighth, Ninth and Eleventh Causes of Action based on qualified immunity under state law.

Finally, the Court finds that Plaintiffs have failed to sufficiently allege either negligent or intentional infliction of emotional distress against the individual Deputies. To succeed on their negligent infliction of emotional distress claim, Plaintiffs must prove (1) duty, (2) breach of that duty, (3) proximate cause, (4) damage or injury, and (5) objective symptomatology that is susceptible to medical diagnosis and proven by medical evidence. *Hunsley v. Giard*, 87 Wn.2d 424, 434-36, 553 P.2d 1096 (1976); *Hegel v. McMahon*, 136 Wn.2d 122, 135, 960 P.2d 424 (1998). Plaintiffs' claim fails as a matter of law because they have not provided any allegations of objective symptomatology that would allow their case to go forward, and this Court has already determined that the Deputies are immune from suit on any negligence claim. *See* Dkt. #1, Ex. A at ¶¶ 8.1-8.5. As a result, Plaintiffs' Fifth Cause of Action is dismissed.

ORDER
PAGE - 12

Likewise, Plaintiff claim for intentional infliction of emotional distress (also known as outrage) must also be dismissed. In order to succeed on a claim for the tort of outrage, a party is required to prove (1) extreme and outrageous conduct, (2) the intentional infliction of emotional distress, and (3) the resulting emotional distress is severe. *Kloepfel v. Bokor*, 149 Wn.2d 192, 194-95, & n.1, 66 P.3d 630 (2003). The conduct must be "'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'" *Dicomes v. State*, 113 Wn.2d 612, 630, 782 P.2d 1002 (1989) (quoting *Grimsby v. Samson*, 85 Wn.2d 52, 59, 530 P.2d 291 (1975)). Having reviewed the allegations in the Complaint, and for the reasons already discussed, the Court finds as a matter of law that Plaintiffs did not allege extreme and outrageous conduct. As a result, Plaintiffs' Tenth Cause of Action is dismissed.

*2. Municipal Defendant*

The Court also finds that Plaintiffs have failed to allege any claim against Defendant Pierce County. Although Pierce County is named as a separate Defendant, Plaintiffs have not actually set forth a cause of action against that municipality. *See* Dkt. #1, Ex. A. To set forth a claim against a municipality under § 1983, a plaintiff must show that the defendant's employees or agents acted pursuant to an official custom, pattern, or policy that violates the plaintiff's civil rights; or that the entity ratified the unlawful conduct. *Galen v. County of Los Angeles*, 477 F.3d 652, 667 (9th Cir. 2007); *Larez v. City of Los Angeles*, 946 F.2d 630, 646-47 (9th Cir. 1991). Additionally, a municipality may be liable for a "policy of inaction" where "such inaction amounts to a failure to protect constitutional rights." *Lee v. City of Los Angeles*, 250 F.3d 668, 682 (9th Cir. 2000) (quoting *City of Canton v. Harris*, 489 U.S. 378, 388, 109 S. Ct. 1197, 103 L. Ed. 2d 412 (1989)). Municipal liability for inaction attaches only where the

policy amounts to "deliberate indifference." *Id.* The custom or policy of inaction, however, "must be the result of a conscious or deliberate choice to follow a course of action made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question." *Id.* (citations and internal punctuation omitted). Thus, to impose liability on a local government entity for failing to act to preserve constitutional rights, a § 1983 plaintiff must allege that: (1) a municipality or its employee deprived plaintiffs of a constitutional right; (2) the municipality has customs or policies that amount to deliberate indifference; and (3) those customs or policies were the "moving force" behind the constitutional right violation. *Id.* at 681-82.

Further, "a municipality cannot be held liable under § 1983 on a respondeat superior theory." *Monell v. N.Y.C. Dep't of Soc. Servs.*, 436 U.S. 658, 691, 98 S.Ct. 2018, 56 L.3d.2d 611 (1978). A municipality is not liable simply because it employs a tortfeasor. *Monell*, 436 U.S. at 691. Indeed, a municipality may not be held liable for the torts of its employees unless they were acting pursuant to an official policy or longstanding custom or practice. *Botello v. Gammick*, 413 F.3d 971, 978-79 (9th Cir. 2005) (citing *Monell*, 436 U.S. at 691).

Until recently, the Ninth Circuit required plaintiffs asserting § 1983 claims against local governments "to set forth no more than a bare allegation that government officials' conduct conformed to some unidentified government policy or custom." *AE ex rel. Hernandez v. Cnty. of Tulare*, 666 F.3d 631, 637 (9th Cir. 2012) (citing *Shah v. Cnty. of Los Angeles*, 797 F.2d 743, 747 (9th Cir. 1986); *Whitaker v. Garcetti*, 486 F.3d 572, 581 (9th Cir. 2007)). However, in both *AE ex rel. Hernandez* and *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011), the Ninth Circuit applied the *Iqbal-Twombly* pleading standard and disavowed the "bare allegation" standard for civil-rights plaintiffs. Now a plaintiff asserting municipal liability must plead

ORDER
PAGE - 14

"sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself" as well as "factual allegations that . . . plausibly suggest an entitlement to relief . . . ." *AE ex rel. Hernandez*, 666 F.3d at 637 (quoting *Starr*, 652 F.3d at 1216).

In this case, Plaintiffs fail to set forth any factual allegations against Pierce County that would support a plausible claim under Section 1983. Plaintiffs fail to identify any policy, custom or practice that was the alleged "moving force" behind Plaintiffs' injuries. *See* Dkt. #1, Ex. A. Additionally, because the Court has found no constitutional violation by the individual Deputies, there can be no *Monell* liability.

In addition, to the extent that Plaintiff alleges municipal liability on a theory of negligent supervision and training, that claim must also be dismissed. Plaintiffs have failed to allege any conduct by County employees that falls outside the scope of their official duties. An employer is vicariously liable for the negligent acts of employees only when those acts occur within the scope of employment. *Shielee v. Hill*, 47 Wn. 2d 362, 365, 287 P.2d 479 (1951). A negligent supervision claim, in contrast, lies only when an employee acts outside the scope of employment. *Id.* at 367; *Gilliam v. Dep't of Soc. & Health Servs.*, 89 Wash. App. 569, 585, 950 P.2d 20 (1998) (noting that where defendant admits employee acted within scope of employment, and is thus vicariously liable, an action for negligent supervision would be "redundant"). As a result, Pierce County must be dismissed as a Defendant.

**C. Leave to Amend**

Ordinarily, leave to amend a Complaint should be freely given following an order of dismissal, "unless it is absolutely clear that the deficiencies of the complaint could not be cured by amendment." *Noll v. Carlson*, 809 F.2d 1446, 1448 (9th Cir. 1987); *see also DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992) ("A district court does not err in

denying leave to amend where the amendment would be futile." (citing *Reddy v. Litton Indus., Inc.*, 912 F.2d 291, 296 (9th Cir. 1990)). Here, the Court concludes that granting leave to amend would be futile. The Court can conceive of no possible cure for the deficiencies in Plaintiff's Complaint, particularly given the documentary evidence provided by Plaintiffs with their Complaint as discussed above.

### D. Pending Motion to Remand

Plaintiffs have filed a Motion to Remand this matter to state court, which is pending consideration. Dkt. #12. Because the Court has determined that Plaintiffs' Complaint should be dismissed, the pending motion to remand is now moot. Accordingly, the Court will not address that motion.

### IV.  CONCLUSION

Having reviewed the relevant pleadings, the declarations and exhibits attached thereto, and the remainder of the record, the Court hereby ORDERS:

1) Defendants' Motion to Dismiss (Dkt. #3) is GRANTED, and Plaintiffs' claims are dismissed in their entirety.

2) Plaintiffs' pending Motion to Remand (Dkt. #12) is DENIED as MOOT.

3) This matter is now CLOSED.

DATED this 16 day of May 2016.

RICARDO S. MARTINEZ
CHIEF UNITED STATES DISTRICT JUDGE